No. 15-1575C
(Judge Wheeler)
Public Version

---

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

BRYNDON FISHER,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

---

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

<div style="margin-left:50%">

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

STEVEN J. GILLINGHAM
Assistant Director

</div>

OF COUNSEL:

WILLIAM S. MEYERS
Deputy General Counsel
Office of the General Counsel
Administrative Office of the U.S. Courts

<div style="margin-left:50%">

MEEN GEU OH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0184
Meen-Geu.Oh@usdoj.gov

</div>

December 7, 2018                    Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

QUESTION PRESENTED ............................................................................................ 2

STATEMENT OF FACTS ............................................................................................ 2

    I.      The Judiciary And PACER ................................................................. 2

    II.     Mr. Fisher's Initial Lawsuit ............................................................... 5

    III.    PACER's Technical Function ............................................................. 6

    IV.   Mr. Fisher Amends His Complaint ..................................................... 10

SUMMARY OF THE ARGUMENT ............................................................................. 10

ARGUMENT ................................................................................................................. 12

    I.      Standard Of Review .......................................................................... 12

    II.     The Undisputed Facts Show That PACER Quantifies User Charges For Docket Reports Based Upon The Number Of "Bytes Extracted" From The Database ........................................................................................... 13

    III.    Mr. Fisher's Attempt To Infuse Ambiguity Into The Term "Bytes Extracted" Through His Expert Is Unwarranted .................................... 17

    IV.   Even So, Mr. Fisher's Expert's Proposed Alternative Interpretation Of The Term "Bytes Extracted" Is Facially Unreasonable .................... 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................ 12

*Blackstone Consulting Inc. v. United States*,
    65 Fed. Cl. 463 (Fed. Cl. 2005) ............................................................................... 17

*Blackstone Consulting Inc. v. United States*,
    170 F. App'x 128 (Fed. Cir. 2006) ........................................................................... 17

*Casitas Mun. Water Dist. v. United States*,
    543 F.3d 1276 (Fed. Cir. 2008) ................................................................................ 11

*Dana Corp. v. United States*,
    174 F.3d 1344 (Fed. Cir. 1999) ................................................................................ 13

*Gould, Inc. v. United States,*
    935 F.2d 1271 (Fed.Cir.1991) .................................................................................. 13

*Honeywell, Inc. v. United States*,
    661 F.2d 182 (Cl. Ct. 1981) ..................................................................................... 13

*Northrop Grumman Corp. v. Goldin*,
    136 F.3d 1479 (Fed. Cir. 1998) ................................................................................ 13

*NVT Technologies, Inc. v. United States*,
    370 F.3d 1153 (Fed. Cir. 2004) ................................................................................ 13

*Ralph Larsen & Son, Inc. v. United States*,
    17 Cl. Ct. 39 (1989) ................................................................................................. 17

*Sparton Corp. v. United States*,
    77 Fed. Cl. 1 (2007) ................................................................................................. 17

## Statutes

28 U.S.C. § 1913 .............................................................................................................. 3

## Rules

RCFC 56 ......................................................................................................................... 12

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a breach of contract case against the United States, which is alternatively pleaded as an illegal exaction case. The case raises a single factual allegation: Plaintiff Bryndon Fisher alleges that when he requests online (HTML) docket reports from the United States Judiciary's docket creation program, Public Access to Court Electronic Records (PACER), the Judiciary overcharges him relative to its published formula for those reports.

The material facts are undisputed. The parties agree on how PACER builds (and charges users for) docket reports that users order from the system. The case now turns upon an issue of contract interpretation. In relevant part, the Judiciary tells users that docket report charges will be "based on the number of *bytes extracted* (4,320 bytes = 1 billable page)." The parties disagree on the meaning of the term "bytes extracted." We believe the term "bytes extracted" refers to the actual amount of data PACER draws out of court databases to respond to a user's request for a docket report. That definition is supported by the plain language of the Judiciary's documents. In fact, Mr. Fisher previously agreed with us and conceded that if he was "charged based on the actual number of bytes extracted from the database," he would have no case.

Mr. Fisher's position changed when he learned conclusively that he was in fact charged for his docket reports based upon the number of bytes that PACER retrieved from court databases. Rather than concede the case, Mr. Fisher (through his expert) now argues that the term "bytes extracted" does not refer to the quantity of bytes PACER draws out of court databases. Instead, Mr. Fisher's expert claims that the term "bytes extracted" refers to the number of data characters (or bytes) that PACER "displays" in a user's web browser. When displaying the docket report, the PACER software compacts the retrieved data (shedding "bytes") before displaying it, in part, to make the report more readable. PACER coincidentally

displays fewer "bytes" of data than it actually retrieves from court databases.  Mr. Fisher now argues that when PACER documents say users will be charged "based on the number of bytes extracted," PACER actually means users will be charged for "the number of bytes [or characters] displayed in the docket report."

Mr. Fisher's expert's strained interpretation—that the term "bytes extracted" should refer to the "bytes displayed"—is inappropriate and unpersuasive.  Mr. Fisher has conceded that he would have no case if "PACER charged [him] based on the actual number of bytes extracted *from the database*."  Presenting his expert's contrary view to create ambiguity where he previously agreed there was none does not save his case.

## QUESTION PRESENTED

Whether the Government is entitled to judgment as a matter of law because when the Judiciary states that users will be charged for docket reports based on the number of "bytes extracted," the term refers to the bytes retrieved from court databases in response to a user's query—not the fewer bytes PACER displays after the software edits and shortens that data.

## STATEMENT OF FACTS

I.    The Judiciary And PACER

PACER is a software program that allows the public to access court filings and case information residing on court electronic databases.[1]  Defendant's Statement of Undisputed Facts (Def.'s Stmt. Undis. Facts) ¶ 1.  At its core, however, PACER is a public service implemented by

---

[1] Throughout this motion, we may refer to "database" in the singular.  But each federal court maintains its own electronic database of case information (*i.e.*, CM/ECF).  Def.'s Stmt. Undisp. Facts ¶ 1.  There are approximately 200 district and bankruptcy courts across the United States, meaning there are approximately 200 federal court databases.  Each court runs a variant of the CM/ECF software that has been vetted (and potentially modified) by local court technical staff to ensure that the software will operate on each court's system.  *Id.*

"the Federal Judiciary in keeping with its commitment to provid[e] public access to court information via a centralized service."  *Id*. at ¶ 2.  Through PACER, the public may access from nearly any location in the United States, all non-confidential court filings, as well as up-to-date case activity, in any case, in any Federal court.  *Id*.

As part of its ongoing mission, the Judiciary is authorized by Congress to collect "reasonable fees" to provide such "access."[2]  28 U.S.C. § 1913 (note).  To further its public access commitment, however, the Judiciary has implemented a series of cost-saving measures to benefit the public.  For example, the Judiciary does not charge a registration fee to open a PACER account.  Def.'s Stmt. Undisp. Facts ¶ 4.  The Judiciary also provides free access terminals in every Federal courthouse throughout the United States, allowing users to access PACER and view court documents at no cost.  *Id*.  For users that prefer the convenience of accessing PACER from their personal computers, the Judiciary publishes a charge of $0.10 per page to access Court documents remotely—a rate which has been reviewed and approved by members of Congress.  *Id*.  The Judiciary also caps the maximum user charge for docket reports at $3.00 per transaction, which limits the chargeable amount for a report.  *Id*.  And if a user does not exceed $15 in cumulative charges in any quarter, the Judiciary waives all charges, essentially providing the user with free access to court databases for that portion of the calendar year.  *Id*.

Most PACER users are no doubt aware that PACER allows users to view court filings and decisions on their private web browsers.  But PACER also has a feature that allows users to aggregate and access generalized case data.  Def.'s Stmt. Undisp. Facts ¶ 5.  Using this feature,

---

[2] "Congress directed the Judiciary to fund PACER through user fees."  Def.'s Stmt. Undisp. Facts ¶ 3.  That is because PACER "does not receive appropriations from the federal government to provide electronic public access services."  *Id*.

users can run customized searches online to create individualized reports that provide users with basic information about any case in that court, as well as a list of case activity.  *Id.*  These reports are called docket reports or docket sheets, which are typically presented in a web browser in HTML format.[3]  *Id.*  "The typical docket report contains information from the [case] cover sheet submitted by the plaintiff for each complaint filed."  *Id.*  Docket reports identify the presiding court and judge, the parties, the parties' counsels, the nature of the case, and list all case activity within a requested timeframe.  *Id.*  Unlike court filings, which are static documents that are permanently stored within each court's database, HTML docket reports do not exist until a user makes a request.  Def.'s Stmt. Undisp. Facts ¶ 6.  Relying on data stored in the courts' systems, PACER software builds these docket reports "on the fly," piece-by-piece, in response to each specified user search.  *Id.*  Because of this feature, a user is able to view within seconds, in real-time, a custom version of the most recent record of any case on any Federal court's docket.[4]

For HTML docket reports, however, the Judiciary cannot apply the $0.10 per page charging baseline.  That is because, no matter the length, HTML docket reports are always represented on web browsers as a single, continuous web page (where a user can scroll down on the browser screen to view the entire report), making page length an inappropriate way to determine a user charge.  Def.'s Stmt. Undisp. Facts ¶ 8.  Instead, the Judiciary tells users that for HTML docket reports, they will be charged based upon the "information extracted, such as the

---

[3] Although not at issue in this case, users have the option of viewing their docket reports in "portable document format" (PDF), as opposed to HTML text displayed in a web browser. Regardless of how the user chooses to view the report, PACER builds and charges for docket reports in the same way.

[4] Typically, the document's existence is momentary.  Unless the user saves a copy, the created docket sheet eventually ceases to exist some time after the user closes the web browser. Def.'s Stmt. Undisp. Facts ¶ 7.

data used to create a docket sheet." Def.'s Stmt. Undisp. Facts ¶ 9.  In effect, "[a] formula

determines the number of pages" for the user's bill, where "[b]illable pages for docket reports"

will be "based on the number of *bytes extracted* (4,320 bytes = 1 billable page)." *Id.*

The Judiciary's formula— that "4,320 bytes = 1 billable page"—is based upon a well-

accepted printing concept.  On a typewriter, an 8.5" x 11" sheet of paper with standard margins

can fit 54 single-spaced lines, with each line holding a maximum of 80 characters across.  Def.'s

Stmt. Undisp. Facts ¶ 10.  This means that a single-spaced page can hold (at maximum, without

any formatting) 4,320 characters.  *Id.* (citing Edwards Tr. 136:10-24).  On a computer screen,

each character in the English language is generally represented on a computer screen as one byte

of data.  *Id.*  Because of this relationship, the Judiciary reasoned that measuring the amount of

retrieved data against a divisor equal to the maximum number of characters allowable on a

single, typewritten page (*i.e.*, 4,320) would provide a reasonable (and presumably generous)

proxy for billable pages in online docket reports.[5]

II.    Mr. Fisher's Initial Lawsuit

In late 2013, Mr. Fisher—a home-based investor—opened a PACER account.  Def.'s

Stmt. Undisp. Facts ¶ 11.  For approximately one year, he began tracking over a dozen lawsuits

in the United States Court of Federal Claims, a United States Bankruptcy Court, and several

United States District Courts.  *Id.*  In total, Mr. Fisher requested approximately 160 online

(HTML) docket reports and was charged approximately $90 for his searches—which averages to

---

[5] Neither party disputes that it would atypical for a document to be crowded with that many characters on a single page of text.  Def.'s Stmt. Undisp. Facts ¶ 10.  Documents intended for human reading contain formatting, such as indents, larger font, and double-spacing, to make the document readable.

just over 50 cents per search.[6]  Def.'s Stmt. Undisp. Facts ¶ 12.  Mr. Fisher agreed to pay the

published charge for the service, but later claimed to be dissatisfied by the amount he paid.

Def.'s Stmt. Undisp. Facts ¶ 13.

In 2015, Mr. Fisher brought this lawsuit, alleging that the PACER software must contain

a "systemic error" that "miscounts bytes" thus inflating his charges for access to HTML docket

reports.  Mr. Fisher specifically alleged that PACER duplicatively counted some extracted bytes

five times.  ECF No. 8 at ¶ 38.  Mr. Fisher demanded a refund from the Judiciary, claiming that

the Government had breached a contract, or in the alternative, committed an illegal exaction.

III.    PACER's Technical Function

Starting in 2017, the parties commenced a 14-month fact and expert discovery period

exploring, in part, the technical function of PACER.  Today, the parties agree on the manner in

which PACER builds (and generates charges for) HTML docket reports.  Def.'s Stmt. Undisp.

Facts ¶ 15 (citing Edward Tr. 178:5-14).

For purposes of generating the user charge, PACER counts the amount of "information

extracted, such as the data used to create a docket sheet," Def.'s Stmt. Undisp. Facts ¶ 4, by

keeping a running tally of the amount of data it retrieves from the court database to construct a

report.  Def.'s Stmt. Undisp. Facts ¶ 16.  There is no dispute that the process of retrieving data

from court databases is called an extraction.  Def.'s Stmt. Undisp. Facts ¶ 17.  The retrieved data

is measured in bytes, which is simply a unit of measure, and a reasonable method to measure

data quantity.  Def.'s Stmt. Undisp. Facts ¶ 18.  PACER does not duplicatively count any of

---

[6] Mr. Fisher has run many more docket report searches for which he was not charged. Def.'s Stmt. Undisp. Facts ¶ 12.  Mr. Fisher was not charged because he did not exceed $15 in user charges for the relevant period of the calendar year.  *Id*.  PACER thus waived Mr. Fisher's charges for those searches.

those bytes.  Def.'s Stmt. Undisp. Facts ¶ 19.  PACER does not count bytes that are not retrieved.[7]  Def.'s Stmt. Undisp. Facts ¶ 20.  Nor does PACER count any bytes that do not originate from the database.  Def.'s Stmt. Undisp. Facts ¶ 21.  And PACER does not make any mathematical errors when applying the final number of bytes retrieved to PACER's published formula to generate a user charge.  Def.'s Stmt. Undisp. Facts ¶ 24.

The PACER software also has a second step.  Because the extracted data is "not yet in a form that is ready for presentation to the user," Def.'s Stmt. Undisp. Facts ¶ 25, PACER software edits and reformats the retrieved data to turn the docket data into a report before the data is presented to the user on a web browser.  Def.'s Stmt. Undisp. Facts ¶ 28.  This editing process causes PACER to, in part, compact (or sometimes exclude) some information and thus display less text (or bytes) than PACER actually retrieves from court databases.  *Id*.

For example, PACER will use citations and call signals (similar to how lawyers use *id*. or abbreviated case names) to avoid redundantly displaying extraneous text that it would otherwise have to display twice.  Def.'s Stmt. Undisp. Facts ¶¶ 29-30.  This could occur when two different parties in a case have the same attorney.  As PACER retrieves information to build the docket sheet, PACER will retrieve the attorney's identifying information each time his information is needed: here twice, because the attorney separately represents two different parties in the case— once for each party the attorney represents.  *Id*.  That is because each party must be

---

[7] In fact, PACER is designed to not count certain bytes retrievals from court databases.  Def.'s Stmt. Undisp. Facts ¶ 22.  Our expert's undisputed analysis shows, for example, that after these programmed reductions, Mr. Fisher was actually charged for only about 65 percent of all the bytes his searches extracted from court databases.  Def.'s Stmt. Undisp. Facts ¶¶ 40-41.

independently linked to his attorney, and vice versa (whether the attorney represents two clients in the case or just one), and that relationship must be made apparent on the docket sheet.  *Id.*[8]

When compiling the information for display, however, PACER will execute an editing function to enhance readability for users.  Def.'s Stmt. Undisp. Facts ¶ 28.  Rather than redundantly displaying the same attorney's full address, fax number, phone number, and email twice on the docket sheet (opposite both his clients), PACER is programmed to display the attorney's contact information only once, opposite the first named party, and then instead use abbreviations and call signals anytime that same contact information must be referenced again. Def.'s Stmt. Undisp. Facts ¶¶ 29-30.  So when the second party is mentioned in the report, PACER lists the name of his attorney (who has already been mentioned in the report), but substitutes the attorney's contact information with the abbreviated call signal, "See above for address," which shortens the number of characters (or bytes) PACER chooses to display.  *Id.* We provide a snapshot to demonstrate below.[9]

---

[8] Users have the option not to request such information as part of their search, and thus customize docket report searches in PACER to minimize data extractions.  Def.'s Stmt. Undisp. Facts ¶¶ 29-30 ("a well-defined search will yield specific results and fewer fees.").

[9] A nearly identical phenomenon occurs in a similar scenario where one party is represented by two attorneys who share the same address (*e.g.*, the attorneys are employed by the same law firm).  *Id.*  Each attorney's information—address, phone number, and fax number, for example—might be identical.  *Id.*  But that information is separately and independently entered in the Court's database for each attorney.  *Id.*  Thus when PACER processes the user's request, PACER will retrieve information about each counsel.  *Id.*  Before displaying the information, the software will replace identical information with the shorthand "See above for address" to save space and (hopefully) make for a more readable document.  *Id.*



Def.'s Stmt. Undisp. Facts ¶ 11 (Edwards Tr. Ex. 9).

Although editing decisions like the one above comprise the biggest difference between the amount of data PACER retrieves in response to a search and what PACER ultimately chooses to display, there could be other causes for differences. For example, PACER will also avoid displaying internal identifiers—basically electronic guideposts that the software uses to locate which data is necessary to build a report. Def.'s Stmt. Undisp. Facts ¶ 31. Or if a party for some reason has provided a court with his personal contact information as part of the case cover sheet, PACER will retrieve that identifying information as part of a user search. *Id.* But depending on the circumstance (most likely because the party is represented by counsel), PACER will not disclose on the publicly accessible docket report the party's personal contact information. *Id.*

In making these editing, formatting, and display decisions, PACER ultimately displays less data than it actually retrieves from court databases.

9

IV.    Mr. Fisher Amends His Complaint

After expert discovery, Mr. Fisher requested leave to amend his pleading.  ECF No. 51.

Mr. Fisher no longer alleges that PACER counts some "bytes extracted" five times when

building docket reports.  Def.'s Stmt. Undisp. Facts ¶ 32.  In fact, he no longer disputes how

PACER functions at all.  Instead, he brings a contract interpretation dispute, challenging the

meaning of the term "bytes extracted," as that term is used in Judiciary's documents regarding

PACER's charging formula for docket reports.  Def.'s Stmt. Undisp. Facts ¶¶ 33-36.

Mr. Fisher alleges that, according to his expert's interpretation of the term, PACER

should *not* count the amount of raw data "used to create a docket sheet" to quantify a user

charge, which is what PACER has been programed to do.  Def.'s Stmt. Undisp. Facts ¶ 34.

Rather, in his view, PACER should count only whatever PACER chooses to present, after

PACER has completed all formatting and editing choices.  Def.'s Stmt. Undisp. Facts ¶ 34.[10]  At

bottom, Mr. Fisher argues that when the Judiciary states that user charges will be "based on the

number of *bytes extracted*," the proper reading of those statements is that PACER will charge

users based upon "the number of bytes displayed in the docket report."  Def.'s Stmt. Undisp.

Facts ¶ 35.

SUMMARY OF THE ARGUMENT

Mr. Fisher's strained, alternative interpretation—that the term "bytes extracted" should

refer to the "bytes displayed"—lacks any reasonable support.  If Judiciary had intended to charge

---

[10] Mr. Fisher's expert concedes that the term "bytes extracted does not have a precise definition" in his field, and that "there isn't a single authoritative source that you can go to to find such a definition."  Def.'s Stmt. Undisp. Facts ¶ 37 (citing Edwards Tr. 143:5-23).  His definition of "further extraction," therefore, does not rely on any authoritative source, and is based on his purported "logical reasoning" and his expert "understanding" of the term.  Def.'s Stmt. Undisp. Facts ¶ 38.

users based on the number of bytes presented on a docket sheet, it could have easily said so.  But the Judiciary *never* states that users will be charged based on the number of bytes "in the displayed docket report."  Instead, the Judiciary states repeatedly that "[b]illable pages for docket reports" will be "based on the number of bytes extracted."

Textually, there is only one fair reading of that term.  The term "bytes extracted" refers to the amount of raw data collected from the database in response to a user's search query.  A "byte" is simply a unit of measure—like an inch, pound, or gallon.  The term "extracted" is a past-tense verb that simply means to "pull out" or "draw forth."  There should be no confusion about what these terms mean.  Nor can it be disputed that when a user accesses PACER and requests a docket report, the user should know that PACER is extracting information from a repository where the relevant data is held—here, court databases.

Nonetheless, Mr. Fisher (through his expert) claims that "bytes extracted" should refer to the "bytes in the displayed docket report," regardless of how much data PACER actually retrieves from court databases while responding to a docket report request.  But Mr. Fisher is wrong for three reasons.  First, expert testimony is inappropriate to resolve a clear question of law.  Second, contrary to what Mr. Fisher's expert seems to suggest, the verb "display" is not interchangeable with the verb "extract."  The words have separate and distinct meanings.  Third, the PACER manual squarely contradicts the view that users should expect to be charged based on number of characters displayed.  The PACER manual states that "[d]ocket reports are generated with the number of pages for a docket sheet *before* the document is reformatted as a web page," meaning the per page charge for a docket report is determined before the information has been edited and formatted for display on a web browser.  That is consistent with other language the Judiciary publishes—that charges for "docket sheets" are based on the amount of

11

"information extracted, such as the data used to create" each "docket sheet." Plaintiff's argument that PACER should charge based upon what PACER "displays to the user" is therefore inconsistent with the plain language of the Judiciary's published documents.

Mr. Fisher's expert's new theory also contradicts Mr. Fisher's sworn testimony. Mr. Fisher repeatedly conceded that if it "turns out that PACER charged [him for his docket reports] based on the actual number of bytes extracted *from the database*," then he would agree he was "charged what [he] expected to be charged," demonstrating he had no difficulty interpreting the term on its face. That then became the focus of discovery. Today, neither party disputes that PACER does in fact base its charge on the "actual number of bytes extracted from the database." Accordingly, Mr. Fisher can no longer dispute that he was "charged what [he] expected to be charged."

ARGUMENT

I.      Standard Of Review

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1283 (Fed. Cir. 2008). In considering a motion for summary judgment, the Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. Cases

involving only questions of law are particularly appropriate for summary judgment. *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999).

In questions of contract interpretation, the inquiry begins "with the language of the written agreement." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). "We must construe a contract so as 'to effectuate its spirit and purpose' and to give 'reasonable meaning to all of its parts.'" *Northrop Grumman Corp. v. Goldin*, 136 F.3d 1479, 1483 (Fed. Cir. 1998) (quoting *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)). "A contract clause is construed in order to give it the effect intended by both parties." *Honeywell, Inc. v. United States*, 661 F.2d 182, 186 (Cl. Ct. 1981).

II.     **The Undisputed Facts Show That PACER Quantifies User Charges For Docket Reports Based Upon The Number Of "Bytes Extracted" From The Database**

The parties do not dispute how PACER builds a docket report or calculates charges. Def.'s Stmt. Undisp. Facts ¶ 15.  In fact, the parties' experts approached their respective reports in nearly the same way.  They first reviewed the relevant computer code.  Then each (identically) reconstructed Mr. Fisher's searches.  Def.'s Stmt. Undisp. Facts ¶ 40.  Then after using Mr. Fisher's searches as a proxy for PACER's general function, the parties drafted their reports, which explained what PACER does to retrieve data, how PACER edits that data to create a viewable report, and then how PACER computes a user charge.  Def.'s Stmt. Undisp. Facts ¶¶ 15-31.  The parties now agree on how PACER functions.  Def.'s Stmt. Undisp. Facts ¶ 15 (citing Edwards Tr. 178:5-14 ("I agree that my understanding of the source code and Dr. Ullman's and Dr. Lee's understanding of the source code I think is basically in alignment in terms of what the code does.") and 106:8-12 ("it appears that [the Government's expert's] analysis of the source code and his analysis of the way that charges were computed is entirely consistent with my own analysis.")).

13

Demonstrating that the issue is now ripe for adjudication as a matter of law, the only

material difference between the parties now (and only through plaintiff's expert) is that the

parties disagree as to what the term "bytes extracted" should measure.  The term "bytes

extracted" should refer to the data retrieved from the CM/ECF databases when a user requests a

docket report.  That is because any PACER user would understand that the data used to build a

docket report comes from a source, and that the source in this case is each court's electronic

database (*i.e.*, CM/ECF).  In fact, no user can reasonably deny this understanding because that is

what the Judiciary essentially tells users on its public website.

> The Case Management/Electronic Case Files (CM/ECF) system is
> the Federal Judiciary's comprehensive case management system for
> all bankruptcy, district, and appellate courts.  CM/ECF allows courts
> to accept filings and provides access to filed documents online.
> CM/ECF gives access to case files by multiple parties, and offers
> expanded search and reporting capabilities.  The system also offers
> the ability to immediately update dockets and download documents
> and print them directly from the court system.

PACER CM/ECF web page, available at https://www.pacer.gov/cmecf/ (last visited Dec. 3,

2018).

In addition, the Judiciary tells users repeatedly that for HTML docket reports, users will

be charged based upon the number of "bytes extracted."  There is no dispute that the term "byte"

refers to a unit of measure—similar to an inch, pound, or gallon.  Def.'s Stmt. Undisp. Facts ¶

18.  And the term "extracted" is the past tense of the verb "extract," which means "to draw forth"

or "to pull or take out forcibly."  Extract, Merriam-Webster's Dictionary, available at

https://www.merriam-webster.com/dictionary/extract (last accessed Dec. 4, 2018).  Based on

these well-accepted definitions, the only reasonable interpretation of the term "bytes extracted"

is that when a user asks PACER to build a docket report, he should expect to be charged for

whatever number of "bytes" are "drawn" or "pulled" from each court's electronic database in response to his request.

In fact, Mr. Fisher agreed with this interpretation repeatedly at his deposition. For example, we presented one of his docket report charges to him, which amounted to $.20, and asked:

> Q. If it turns out that PACER did actually extract between 4321 and 8640 bytes *from the database* while performing this search, would you agree that PACER charged you in accordance with its formula?
>
> Mr. Schubert: Objection; calls for speculation, calls for a legal conclusion.
>
> A. As a layperson, I would say yes.

Def.'s Stmt. of Undisp. Facts ¶ 14 (emphasis added). We then presented another charge to him, amounting to $1.00, and asked the same question.

> Q: Now, for that [$1.00] search, if it turns out that PACER did actually extract between 38,881 and 43,200 bytes *from the database* while performing this search, would agree that PACER charged you in accordance with its formula?
>
> Mr. Schubert: Objection; calls for speculation; calls for a legal conclusion.
>
> A. Given the information you provided, I would say yes.
>
> Q. By Mr. Oh: That would mean you were charged what you expected to be charged; is that correct?
>
> A. That is correct.

*Id*. (emphasis added). After that, rather than go through all of Mr. Fisher's 164 searches, we asked the same question asking him to apply his concession universally to all his searches.

> Q. It's better than going through all 164. I'll ask it again. If for any of the 164 searches at issue here in Exhibit No. 3 it turns out that PACER charged based on the actual number of *bytes extracted from the database* and that was in accordance with the published formula,

would you agree that you were charged what you expected to be charged?

MR. SCHUBERT: Objection; speculation, calls for a legal conclusion, ambiguous.

A.  Yes.

*Id.* (emphasis added).  Mr. Fisher agreed with us each time that the term "bytes extracted" referred to the amount of "bytes extracted from the database," and that if he was in fact charged based upon that number, he would have no case.

Finding that the parties did not dispute the meaning of the term, we had our expert recreate and run all of Mr. Fisher's searches, count all the data that was retrieved for each search, and tell us the resulting bytes count to see whether Mr. Fisher had been unlawfully overcharged. Def.'s Stmt. Undisp. Facts ¶¶ 40-41.   The results show conclusively that the PACER software did not charge Mr. Fisher for more bytes than were retrieved from court databases.  Plaintiff does not dispute our byte counts or our method.  Def.'s Stmt. Undisp. Facts ¶ 41 (citing Edwards Tr. 106:2-5 ("Q: Do you have any reason to dispute the counts that [our expert] provides when he recreated Mr. Fisher's searches?  A. I don't."); 107:14-15 ("Q. So you would agree [our expert's] bytes counts are accurate?  A. I believe so.")).  Nor does plaintiff dispute that those byte counts were correctly applied to PACER's published formula to generate a user charge.  Def.'s Stmt. Undisp. Facts ¶ 24.  These facts show that Mr. Fisher was properly charged for each of his searches based upon the amount of data retrieved from court databases.

Accordingly, there is no genuine dispute that Mr. Fisher was charged for his docket reports based upon the number of "bytes extracted."  Because Mr. Fisher was charged in accordance with the plain terms of the purported contract, he cannot dispute that "he was charged what he expected to be charged."

III.    Mr. Fisher's Attempt To Infuse Ambiguity Into The Term "Bytes Extracted" Through
        His Expert Is Unwarranted

Despite these clear undisputed facts, Mr. Fisher now urges this Court to adopt a position

developed by his expert that the term "bytes extracted" should mean something other than what

the parties themselves agree it plainly means.  In defining "bytes extracted," Mr. Fisher's expert,

Dr. Edwards, believes that PACER should only charge for bytes "in the displayed docket report,"

advocating that the Court ignore how much data is retrieved from court databases to build each

report, and instead just focus on the number of characters that PACER chooses to display.  Def.'s

Stmt. Undisp. Facts ¶¶ 32-36.  Dr. Edwards' theory is that PACER's second-step of editing the

retrieved data and deciding what to present on a user's screen could theoretically also be defined

as a "further extraction," such that the Judiciary should only charge for the "bytes displayed in

the docket report."  *Id*.  Putting aside the merits of such a position, this opinion is improper and

irrelevant, and should not be considered by the Court.

The meaning of the term "bytes extracted" under the alleged contract is the legal question

at the heart of the dispute before the Court.  "Contract interpretation is *a question of law for the*

*court* and thus may be decided on summary judgment."  *Blackstone Consulting Inc. v. United*

*States*, 65 Fed. Cl. 463, 468 (Fed. Cl. 2005), *aff'd*, 170 F. App'x 128 (Fed. Cir. 2006) (emphasis

added).  Expert testimony should not be considered by the Court in deciding this matter.  "In the

absence of specialized trade usage, *expert testimony regarding proper contract interpretation is*

*inadmissible*, as is expert testimony regarding the legal significance of the contract language."

*See Sparton Corp. v. United States*, 77 Fed. Cl. 1, 8 (2007) (emphasis added); *see also Ralph*

*Larsen & Son, Inc. v. United States*, 17 Cl. Ct. 39, 46 (1989) (rejecting a plaintiff's proposal to

introduce expert testimony regarding the interpretation of the contract because "[t]o accept such

an assertion would result in the untenable situation of requiring that every disputed contract be

17

interpreted with expert testimony.  Contracts, such as the one at issue here, are not beyond the ability of courts to accurately interpret.").

Neither party disputes that the term "bytes extracted" does not have any specialized trade usage in the field of computer science.  Mr. Fisher's expert, Dr. Edwards, concedes that the term "bytes extracted does not have a precise definition" in his field, and that "there isn't a single authoritative source that you can go to to find such a definition."  Def.'s Stmt. Undisp. Facts ¶ 37.  Unable to pinpoint any authority supporting his interpretation of the term, Dr. Edwards instead bases his competing interpretation on "common sense," "logical reasoning," and some imprecise atmospheric understanding of what he feels the term should mean based on his "experience."  Def.'s Stmt. Undisp. Facts ¶ 38.  But no typical user could reasonably be expected to interpret the term in the way Dr. Edwards has interpreted it, because Dr. Edwards agrees that no "layperson" would have "a detailed understanding of the internal architecture of distributed systems or [] web-based applications" like PACER.  Def.'s Stmt. Undisp. Facts ¶ 39.

Indeed, Mr. Fisher's attempt to create controversy is mostly illusory.  As we said before, Mr. Fisher admitted on the record that he interpreted "bytes extracted" to mean "bytes extracted *from the database*," showing that he faced no problems interpreting the term used in the PACER documents.  Offering a competing definition through his expert is inappropriate in this purely legal matter.

IV.     Even so, Mr. Fisher's Proposed Alternative Interpretation Of The Term "Bytes Extracted" Is Facially Unreasonable

Regardless, Dr. Edwards' competing interpretation lacks any reasonable support.  Dr. Edwards essentially advocates that the Court ignore how much data is retrieved from court databases to build each report, and instead just focus on what PACER ultimately displays.  No reasonable definition of the term "extracted" would support that view.  Indeed, Dr. Edwards

offers no objective support for his position.  Def.'s Stmt. Undisp. Facts ¶¶ 37-38.  And his

suggestion that the term "extract" should equate to the term "display" is nonsensical.  The

definition of the term "display" is "to put or spread before view" or "to make evident," Display,

Merriam-Webster's Dictionary, available at https://www.merriam-webster.com/dictionary/

display (last accessed Dec. 4, 2018), which bears no apparent similarity to the verb "extract."

The two words have observably distinct meanings, undermining any suggestion that the terms

are interchangeable in this case.

　　　But even assuming Dr. Edwards' position is reasonable in the abstract (it is not), the

PACER manual on its face undermines Dr. Edwards proffered alternative interpretation.  The

PACER manual clearly states that "Docket reports are generated with the number of pages for a

docket sheet *before* the document is reformatted as a web page," Def.'s Stmt. Undisp. Facts ¶ 9

(emphasis added), meaning the per "page" user charge is determined before the PACER software

determines how it will display the data.  That is consistent with the PACER website which states

that for HTML docket reports, users should expect to pay for the "information extracted, such as

the data *used* to create a docket sheet," *id*. (emphasis added), *not* the data displayed on the docket

sheet.  Dr. Edwards' purported interpretation of "bytes extracted" is inconsistent with the plain

language of PACER's published documents.

　　　Dr. Edwards' proposed interpretation that the term "bytes extracted" should be

commensurate with the term "bytes displayed" is unreasonable.  And even if it were not, his

definitions lacks any objective support.  Dr. Edwards' proposed definition for the term does not

salvage Mr. Fisher's case, particularly because Mr. Fisher (who is the only plaintiff in this case)

has conceded repeatedly that our definition is the proper one.

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court grant this motion for summary judgment.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Meen Geu Oh
<u>OF COUNSEL</u>:                           MEEN GEU OH
                                            Trial Attorney
WILLIAM S. MEYERS                           Commercial Litigation Branch
Deputy General Counsel                      Civil Division
Office of the General Counsel               Department of Justice
Administrative Office of the U.S. Courts    PO Box 480
                                            Ben Franklin Station
                                            Washington, DC 20044
                                            Tel: (202) 307-0184
                                            Meen-Geu.Oh@usdoj.gov

December 7, 2018                             Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 7th day of December 2018, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Meen Geu Oh